# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| Audrena Smith & Denise Johnson-Nelson | Civil Action No.: |
| Plaintiffs | Judge |
| vs. | |
| Louisiana State Police; Lamar Davis, in his individual and official capacity as the Louisiana State Police Superintendent ;John Doe 1, in his individual Capacity as a Louisiana State Police trooper; John Doe 2, in his individual capacity as a Louisiana State Police Trooper; John Doe 3, in his individual capacity as a Louisiana State Police trooper; John Doe 4, in his individual capacity as a Louisiana State Police trooper, | Magistrate Judge: |
| Defendants | Jury Trial |
| | Under Fed. R. Civ 38(b) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **COMPLAINT FOR DAMAGES**

For their complaint, Plaintiffs Audrena Smith and Denise Johnson-Nelson, by and through their attorneys, states and alleges as follows:

## INTROUDCTION

1. This cause of action arises out of the vicious killing by several Louisiana State Police troopers of Erroll Johnson at approximately 1 a.m. on July 8, 2020.

2. Audrena Smith is the mother and natural tutor of Aidan Smith, a minor child of the decedent, Erroll Johnson.

3. Denise Johnson-Nelson is the mother of the decedent and the legal guardian and tutor of Kaden Johnson and Isis Johnson, two minor children of the decedent, Erroll Johnson.

4. This cause of action is for money damages and brought pursuant Louisiana Civil Code Articles 2315.1 and 2315.2 for the wrongful death and survival action against (1)

Defendants John Doe 1 ("Doe 1"), John Doe 2 ("Doe 2"), John Doe 3 ("Doe 3"), and John Doe 4 ("Doe 4"), in their respective capacities as duly certified law enforcement officers employed by the Louisiana State Police (collectively the "Defendant Officers"), for their respective violations of Erroll Johnson right to be free injuries and death, intentional and negligent in this case; (2) Superintendent Lamar Davis and the Louisiana State Police for the negligent hiring, supervision, and retention of officers with a history of violating the rights of citizens in their custody, care or control and under the theory of respondeat superior; and (3) Defendant Louisiana State Police for its unconstitutional policies, customs, and/or practices.

5. This cause of actions is further brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Erroll Johnson's constitutional rights secured by the Fourth and Fourteenth Amendments to the United States Constitution against (1) Defendant Officers, (2) Defendant Superintendent Lamar Davis and the Louisiana State Police for the negligent hiring supervision, and retention of officers with a history of violating the rights of citizens in their custody, care or control and under the theory of respondeat superior; and (3) Defendant Louisiana State Police for its unconstitutional policies, customs, and/or practices.

## JURISDICTION AND VENUE

6. Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983, 1988 to redress a deprivation of the Fourth and Fourteenth Amendment rights of the decedent Erroll Johnson. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent state law claims.

7. Venue is proper in this Honorable Court as Defendants' constitutional violations and intentional torts and otherwise violative conduct occurred within the Western District of Louisiana, namely the Monroe Division.

## THE PARTIES

8. At all times relevant hereto, Ms. Audrena Smith was a citizen of the United States and resided in the city of West Monroe, state of Louisiana. Ms. Audrena Smith is the mother and natural tutor of Erroll Johnson's minor child, Aiden Smith, a minor child which Ms. Audrena Smith currently receiving social security benefits on behalf of Erroll Johnson.

9. At all times relevant hereto, Ms. Denise Johnson-Nelson was and is a citizen of the United States and resided in the city of West Monroe, state of Louisiana. Denise Johnson-Nelson is the mother of Erroll Johnson and the custodial guardian of both Isis Johnson and Kaden Johnson, two minor children of Erroll Johnson. The natural mother of Isis Johnson and Kaden Johnson has surrendered and signed over her maternal and parental rights in favor of Denise Johnson-Nelson making her the tutor of both Kaden Johnson and Isis Johnson.

10. The Louisiana State Police is and was at all times a Louisiana agency, organized and existing under and by virtue of the laws of Louisiana.

11. Colonel Lamar Davis is and was at all time material hereto a citizen of the United States and the state of Louisiana

12. Davis was at all times material hereto employed by the Louisiana State Police as a duly appointed and sworn police officer, appointed by the Governor of Louisiana as the Superintendent of the Louisiana State Police, and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

13. John Doe 1 is and was at all times material hereto a citizen of the United States and the state of Louisiana.

14. Doe 1 was at all times material hereto employed by the Louisiana State Police as a duly appointed and sworn police officer and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

15. John Doe 2 is and was at all times material hereto a citizen of the United States and the state of Louisiana.

16. Doe 2 was at all times material hereto employed by the Louisiana State Police as a duly appointed and sworn police officer and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

17. John Doe 3 is and was at all times material hereto a citizen of the United States and the state of Louisiana.

18. Doe 3 was at all times material hereto employed by the Louisiana State Police as a duly appointed and sworn police officer and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

19. John Doe 4 is and was at all times material hereto a citizen of the United States and the state of Louisiana.

20. Doe 4 was at all times material hereto employed by the Louisiana State Police as a duly appointed and sworn police officer and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

## FACTUAL ALLEGATIONS

21. At approximately 12:15 a.m. in the early morning hours of July 5, 2020, Defendant John Doe 1, an officer with a record of excessive force initiated a traffic stop on Erroll Johnson

claiming that he violated some unknown traffic law on Interstate-20 in Ouachita Parish, Calhoun, La.

22. Once Erroll Johnson became aware that he was being stopped, Erroll Johnson attempted to drive his vehicle to a well-lit area. Before he was able to make it to the well-lit area, the passenger, Hannah Coburn, a white female, phoned her dad or some other member of her family who is a law enforcement officer with either the local Sheriff's office and/or Louisiana State Police to allege that Erroll Johnson was a threat in fear of being spotted with Ms. Johnson, a black male. Hannah Coburn told Erroll Johnson that the police will "get him."

23. Upon hearing the conversation that Ms. Coburn had with her dad or other family relative, it scared Erroll Johnson who then pulled the vehicle over immediately. Hannah Coburn immediately exited the vehicle. When Hannah Coburn exited the vehicle, it scarred Erroll Johnson even further. A short time thereafter, Doe 1 began firing his service weapon at Erroll Johnson vehicle. Erroll Johnson exited the vehicle and fled on foot.

24. As Erroll Johnson fled the scene, Doe 1 began shooting his service weapon at Erroll Johnson who was fleeing the scene. At no time relevant did Erroll Johnson brandish a weapon or fire a weapon at Doe 1.

25. A manhunt ensued in the immediate vicinity looking for Erroll Johnson who at this time had buried himself partially underground. Several Louisiana State Police troopers can be heard saying they wanted to kill Erroll Johnson on sight. The manhunt was unsuccessful.

26. Shortly after this incident, several Louisiana State Police officers executed a search warrant at the home of Erroll Johnson's mother house and the trailer of Erroll Johnson. They were unable to locate Erroll Johnson at either home.

27. A short time later, the Louisiana State Police through the media released media alleging that Erroll Johnson was wanted for attempted murder of a Louisiana State Trooper for the incident involving the alleged traffic violation. The release made further stated that Erroll Johnson should be considered armed and dangerous.

28. Approximately three days later, the Louisiana State Police became aware of the whereabouts of Erroll Johnson, specifically that he was at the Red Roof Inn in Monroe, Louisiana.

29. At this time, Erroll Johnson was fully aware of the news articles and the alleged warrant for attempted murder of a police officer, which placed him in immediate fear of being killed on sight.

30. Erroll Johnson, realizing that the manhunt was over, had all intentions of surrendering himself to authorities.

31. Erroll Johnson placed a call to his immediate family members to make them aware of his whereabouts and the fact that the police were there to arrest him, though he believed they had no intention to arrest him but instead to murder him.

32. The officers placed two phone calls to the room in which Erroll Johnson was a guest, to which Erroll Johnson answered with intentions of planning a safe and non-life-threatening surrender. Notwithstanding his answering the phone, the officers never said a word on the phone call.

33. Finally, the Defendant Officers began shooting inside the room where Erroll Johnson was a guest , ultimately delivering the fatal shot, killing Erroll Johnson a short time later.

34. At no time did Erroll Johnson resist arrest when confronted at the Red Roof Inn Motel in Monroe, La.

35. At no time did Erroll Johnson ever make any threats to any of the Defendant Officers on the morning hours of July 8, 2020.

36. At no time did Erroll Johnson point any weapons or brandish any weapons at or in the direction of any of the Defendant Officers on the morning hours of July 8, 2020.

37. The alleged arrest warrant for attempted murder of a police officer which the Defendant Officers and Louisiana State Police were there on July 8, 2020, to execute never existed or if there was a warrant issued, it was based on the lies and deceit of Doe 1 based on the incident described above on July 5, 2020.

38. Following the murder of Erroll Johnson, the Defendant Officers laughed and bragged about finally catching Erroll Johnson and killing him on sight.

39. The Defendant Officers then each materially misrepresented the facts of Mr. Johnson's attempt to surrender by producing, writing, and signing off on "wholly untrue" reports falsely claiming that Erroll Johnson was continuing to resist on July 8, 2020, and fire his weapon first the Defendant Officers.

40. Doe 1 also materially misrepresented the facts of the July 5, 2020, incident by producing, writing, and signing off on "wholly untrue" reports falsely claiming that Erroll Johnson exited his vehicle and immediately began firing at Doe 1.

41. The Defendants each sought to conceal from investigators that there was body cam video.

**A. Louisiana State Police and Defendant Davis; Failure to Properly Discipline or Terminate Dangerous Officers.**

42. Defendants, Doe 1, Doe 2, Doe 3, and Doe 4 are all officers assigned to troop F of the Louisiana State Police.

43. Defendant Davis is the superintendent of the Louisiana State Police with Supervisory responsibility over all troops within the Louisiana State Police, including Troop F and his co-defendants.

44. The Louisiana State Police and Defendant Davis and his predecessor frequently fails to terminate or discipline officers who demonstrate patterns of misconduct.

45. Defendant Officers have been the subject of multiple citizen complaints, which had previously resulted in little to no discipline.

46. Prior to the murder of Erroll Johnson, the Defendant Officers were facing investigation in other excessive force cases.

47. Despite their repeated violations of the constitutional rights of suspects, Defendant Lamar Davis and the Louisiana State Police took little to no disciplinary actions against these officers. These officers were allowed to continue patrolling as members of Troop F under the color of law as duly sworn police officers and repeated their pattern of intentional excessive force which led to the ultimate death and survival damages of Erroll Johnson.

## Count I – 42 U.S.C. 1983 – Fourth Amendment Violations

48. Plaintiffs incorporate and re-alleges all preceding paragraphs as though fully pleaded herein.

49. The conduct by the defendant officers constituted excessive and deadly force in violation of the Fourth Amendment of the United States Constitution, and clearly established law.

50. At all material times the Defendant Officers were each acting under color of state law, as agents of Louisiana, and within the scope of their employment and authority as duly certified officers of the State of Louisiana and for the defendant Louisiana State Police.

51. At all material times, the Defendant Officers had no reason to believe that Erroll Johnson was armed and dangerous on the morning of July 8, 2020.

52. At all material times, the Defendant Officers did not have a reasonable fear of imminent bodily harm when they fired round after round into the hotel room of Erroll Johnson on the morning of July 8, 2020.

53. Every reasonable officer would and should have known that using deadly force against a suspect, in a hotel room, where other guest may be sleeping, who had all intentions of surrendering and who was not resisting constitutes excessive force in violation of the Fourth Amendment.

54. Every reasonable officer would and should have known that using deadly force against a suspect when he flees from a traffic stop constitutes excessive force in violation of the Fourth Amendment.

55. The defendants use of deadly force was objectively unreasonable and violated clearly established law.

56. It was objectively unreasonable for the Defendant Officers to fire multiple rounds into Erroll Johnson's hotel room and to conceal their actions by turning off or redirecting the audio and video of their body camera on the morning of July 8, 2020

57. It was objectively unreasonable for Doe 1 to have fired multiple rounds at Erroll Johnson's vehicle and his person and to conceal his actions by turning off or redirecting the audio and video of his body camera on the morning of July 5, 2020.

58. It was a violation of Erroll Johnson's Fourth and Fourteenth Amendment Rights for the Defendant Officers not to render aid following the shooting by the Defendant Officers on

the morning of July 8, 2020, after noticing the visible injuries from the shooting of Mr. Erroll Johnson.

59. As a result of Doe 1's and the Defendant Officers unjustified, excessive, and illegal use of force, Erroll Johnson experienced conscious pain and suffering and ultimately death.

60. In addition to these uses of unjustified, excessive, and illegal force, each of the Defendant Officers had a duty to intervene on behalf of a citizen whose constitutional rights were being violated in their presence by another officer.

61. Each of the Defendant Officers observed and were in a position to intervene to stop the use of constitutionally unreasonable force against Erroll Johnson.

62. None of the Defendant Officers or Doe 1 ever had a reasonable fear of imminent bodily harm, nor did they have a reasonable belief that any other person was in danger of imminent bodily danger from Erroll Johnson at any point in time.

63. As a result of Defendant Officers failure to intervene in the excessive use of force, Erroll Johnson experienced conscious pain and suffering and psychological trauma.

64. As a direct and proximate result of the acts and omissions described herein, Erroll Johnson suffered compensatory and special damages as defined under federal common law and in an amount to be determined by the jury.

65. Punitive damages are available against the Defendant Officers are are hereby claimed as a matter of federal common law under Smith v. Wade, 461 U.S. 30 (1983).

66. Plaintiffs are entitled to recovery of costs, including reasonable attorneys' fees under 42 U.S.C. 1988.

**WHEREFORE,** Plaintiffs demands judgment in their favor, and against Defendants pursuant to 42 U.S.C. 1983, in an amount in excess of One Million Dollars ($1,000,000.00),

including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

### Count II – La. C.C. art 2315 – Negligent Training, Hiring and Supervision

67. Plaintiff hereby incorporates and re-alleges all preceding paragraphs as fully pleaded herein.

68. At all times relevant hereto, defendants were employed by the Louisiana State Police as duly sworn officers of the Louisiana State Police.

69. At all times relevant hereto, defendant Colonel Lamar Davis was the Superintendent of the Louisiana State Police and is responsible for oversight of all officers in his command under the Louisiana State Police, including Doe 1, Doe 2, Doe 3 and Doe 4.

70. Colonel Lamar Davis and the Louisiana State Police are vested with all of the relevant powers as a police agency with the establishment, maintenance, appointment, removal, discipline, control, and supervision of the police force, subject to some limitations and provisions under relevant Louisiana law.

71. Defendant Davis and the Louisiana State Police had final policymaking authority with regard to establishing written policies and training programs governing the conduct of Louisiana State Police performing police functions.

72. Defendant Davis, as the Superintendent and supervisor of Doe 1, Doe 2, Doe 3, and Doe 4 had knowledge of these officers' unconstitutional patterns and practices and knew that keeping them employed and failing to take appropriate disciplinary actions against these officers gave rise to a risk of violation of citizens' federal rights.

73. Defendant Davis and the Louisiana State Police made a deliberate and/or conscious decision to disregard the known risk of harm that would result from the defendants continued unconstitutional patterns and practices and was deliberately indifferent to and/or tacitly authorized the same.

74. On or prior to May 22, 2020, Louisiana State Police and Colonel Davis and/or his predecessor, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted or ratified and number of customs, patterns, or practices of their co-defendants that failed to provide for the safety of arrestees, detainees, and the like during arrest, including but not limited to the handcuffing and restraint process.

75. On or prior to July 5, 2020 and July 8, 2020 respectively, Colonel Davis and the Louisiana State Police, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that condoned and required officers to turn a blind eye to and not intervene with the use of excessive force by their co-defendants.

76. On or prior to July 5, 2020 and July 8, 2020 respectively, Colonel David and the Louisiana State Police with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that shall be further identified in discovery.

77. Colonel Davis and Louisiana State Police with deliberate indifference to the rights of detainees, arrestees, and the like continued to employ Doe 1, Doe 2, Doe 3, and Doe 4 despite knowledge of their repeated unconstitutional, unlawful, or other improper conduct.

78. Colonel Davis and the Louisiana State Police had the power to terminate or appropriately discipline Doe 1, Doe 2, Doe 3, and Doe 4 for their conduct prior to July 5, 2020 and July 8, 2020 but failed to do so despite their knowledge of a pattern of complaints regarding excessive force.

79. By refusing to appropriately discipline or terminate Doe 1, Doe 2, Doe 3, and Doe 4 it caused these officers to act with impunity without fear of retribution.

80. Colonel Davis' and Louisiana State Police failure to terminate or properly discipline Doe 1, Doe 2, Doe 3, and Doe 4 is part of its larger custom, police, or practice of failing to supervise, terminate, or properly discipline officers for unconstitutional, unlawful or otherwise improper conduct, and thereby encouraged Doe 1, Doe 2, Doe 3, and Doe 4 to continue engaging in unlawful acts toward citizens, including Erroll Johnson.

81. Colonel Davis' negligence in professionally training, supervising, and retaining Officers Doe 1, Doe 2, Doe 3, and Doe 4 after the history of excessive force caused the officers to act with impunity and without fear of retribution.

82. The failure to properly supervise, train, and correct the behaviors of the Doe 1, Doe 2, Doe 3, and Doe 4 was the moving force behind the killing of Erroll Johnson by these officers.

83. Erroll Johnson's physical injuries and psychological trauma leading up to his ultimate death and his death is a direct and proximate result of the acts and omissions by Colonel Davis and the Louisiana State Police.

84. As a direct and proximate result of the acts and omissions described herein, Erroll Johnson suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

85. Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees under 42 U.S.C. §1988.

86. The conduct described in all of the preceding paragraphs amount to negligence, wrongful acts and omissions in negligent training, hiring and supervision under La. C.C. art. 2315.

87. As a direct and proximate result of these wrongful acts and omissions by Colonel Davis and the Louisiana State Police, Erroll Johnson suffered pecuniary loss, pain, suffering, psychological trauma, and severe body aches and pain, and ultimately his death which is compensable in an amount to be determined by a jury.

**WHEREFORE**, Plaintiffs demands judgment in their favor, and against Defendants pursuant to La. C.C. 2315, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

**Count III – 42 U.S.C. 1983 Deliberate Indifference and Cruel and Unusual Punishment**

88. Plaintiff hereby incorporates and re-alleges all preceding paragraphs as fully pleaded herein.

89. The Louisiana State Police and the Defendant Officers knew and could see that Erroll Johnson had suffered serious injuries and was not doing well following his shooting.

90. Upon information and belief, the Louisiana State Police and the Defendant Officers heard Erroll Johnson repeated cries for medical assistance.

91. These defendants took no action to provide medical assistance to Erroll Johnson.

92. The defendants should have acted to secure the provision of appropriate medical care to Erroll Johnson.

93. Erroll Johnson was shot multiple times by the Defendant Officers. His repeated pleas for help were ignored.

94. Notwithstanding their duty to provide medical care and conscious awareness to the risks posed to Erroll Johnson when they failed to provide any medical attention, no one took any necessary and appropriate steps to reduce or eliminate the risks to Erroll Johnson.

95. Upon information and belief, this is a custom and practice of the Louisiana State Police and their officers, especially the Defendant Officers to ignore the medical needs of arrestees.

96. These defendants violated the rights of Erroll Johnson under the Eighth and Fourteenth Amendments to the United States Constitution to adequate medical care, to adequately trained staff, and to protection from harm by substantially departing from the acceptable standards of care in the care and treatment of Erroll Johnson obvious injuries while he was in their custody. They were indifferent to his suffering and inhumane to ignore his needed medical treatment.

97. In the manner described above, these defendants subjected the Plaintiff to cruel and unusual punishment in violation of rights secured to the Plaintiff by the Eighth Amendment to the United States Constitution as enforced through section 1983 of Title 42 of the United States Code

**WHEREFORE,** Plaintiffs demands judgment in their favor, and against Defendants pursuant to 42 U.S.C. 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

### Count IV – Wrongful Death – La. C.C. Article 2315.2

98. Plaintiffs incorporate and re-alleges all preceding paragraphs as though fully pleaded herein.

99. Plaintiffs hereby bring a Wrongful Death claim pursuant to La. C.C. Article 2315.2.

100. The actions of the Defendants caused the death of Erroll Johnson.

101. Plaintiffs claims all available damages under the Louisiana Wrongful Death Statute for financial contribution and the loss of future services, support, society, comfort, affection, guidance, tutelage, and contribution that the Plaintiffs' decedent, Erroll Johnson, would have rendered but for his traumatic, untimely, and unnatural death.

102. Plaintiffs claims damages for payment for all medical expenses, funeral expenses, and burial expenses.

**WHEREFORE**, Plaintiffs demands judgment in their favor, and against Defendants pursuant to La. C.C. 2315.2, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

### Count V – Survival Action – La. C.C. Article 2315.1

103. Plaintiffs incorporate and re-alleges all preceding paragraphs as though fully pleaded herein.

104. Plaintiffs hereby bring a Survival Action under the Louisiana Survival Statute, LA C.C. Article 2315.1.

105. Plaintiffs' claims all available damages under the Statute, including but not limited to, loss of income both past and future income potential, as well as pain and

suffering prior to the death, and for emotional distress suffered by Erroll Johnson from the initiation of the attacks upon him until the ultimate time of his death.

WHEREFORE, Plaintiffs demands judgment in their favor, and against Defendants pursuant to La. C.C. 2315.1, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL ISSUES OF FACT HEREIN.**

### Prayer for Relief

WHEREFORE, Plaintiffs, Audrena Smith and Denise Johnson-Nelson, prays for judgment against Defendants as follows:

1. As to Count I, a money judgment against Defendants for compensatory, special and punitive damages together with costs and disbursements, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest.

2. As to Count II, a money judgment against Defendant Colonel Davis and the Louisiana State Police for compensatory and special damages in an amount to be determined together with costs and disbursements, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interests.

3. As to Count III, a money judgment against Defendants for compensatory and special damages in an amount to be determined together with costs and disbursements, including reasonable attorneys' fees, under 42 U.S.C. §1988 and prejudgment interests.

4. As to Count IV, a money judgment against Defendants for compensatory and special damages in an amount to be determined together with costs and disbursements under La. C.C. 2315.2.

5. As to Count V, a money judgment against Defendants for compensatory and special damages in an amount to be determined together with costs and disbursements under La. C.C. 2315.1.

6. For such other and further relief as this Court deems just and equitable.

RESPECTFULLY SUBMITTED this 7th day of July 2021.

**Respectfully Submitted:**

/s Dwayne Burrell

_____
**DWAYNE BURRELL (35688)**
**ALLEN BURRELL (37621)**
THE BURRELL FIRM LLC
201 Saint Charles Avenue Ste. 2500
New Orleans, LA, 70170
(504) 475-7578 Telephone
(888) 612-8901 FAX
**Attorneys for Petitioner**

**PLEASE ISSUE SUMMONS TO SERVE DEFENDANTS**

Doe 1
Through Louisiana State Police Troop F
1240 LA-594
Monroe, LA 71203

Doe 2
Through Louisiana State Police Troop F
1240 LA-594
Monroe, LA 71203

Doe 3
Through Louisiana State Police Troop F
1240 LA-594
Monroe, LA 71203

Doe 4
Through Louisiana State Police Troop F
1240 LA-594
Monroe, LA 71203

Lamar Davis, Colonel Louisiana State Police
Through Louisiana State Police Troop A
17801 Highland Road
Baton Rouge, LA 70810

Louisiana State Police
Through the Louisiana Department of Public Safety
504 Mayflower Street
Baton Rouge, LA 70802